Thank you, Your Honor. May it please the court. My name is James Washington. I represent the appellant, Brian Harrison. Mr. Harris was arrested in February of 2020, more than three years ago. He has been in custody since that time. The allegations against Mr. Harris are simple. The federal government has alleged that Mr. Harris made a threatening phone call to federal judges chambers. Mr. Harris has pled not guilty to those charges. Since that time, he has adamantly denied that and has tried to proceed to trial. In fact, in September of 2020, Mr. Harris filed a motion alleging that the government was violating his constitutional rights, including his right to a speedy trial. That motion was denied. At about the same time, the federal government filed a motion to have Mr. Harris evaluated to determine if he was competent to stand trial. In March of 2021, Mr. Harris underwent a competency evaluation. It was over a year after he was first arrested. In April of 2021, the district court determined that Mr. Harris was not competent to stand trial. Mr. Harris appealed that decision and this court affirmed. However, in affirming that decision, this court stated that the already much extended length of Mr. Harris' free trial detention is concerning to the court. That was over a year ago. Since then, Mr. Harris has been transferred to FMC Butler, where he went additional testing and evaluation to determine whether or not he can proceed to trial or regain competency. It was determined that Mr. Harris would need to undergo medication in order to do so. Mr. Harris has long objected to medication. He has had bad experiences with medication in the past and has a First Amendment religious objection to medication. Accordingly, Mr. Harris has rejected any attempt to take any medication. The government therefore moved forward on the sale and asked the district court to forcibly administer medication on Mr. Harris. The speedy trial issue is not before us today, is it? It is not, Your Honor. But why has it taken so long to tee this up in this capacity? We moved expeditiously whenever we became aware of the appeal. Why is it? It's not a negative question to you, I don't believe. Do you have an opinion on that? It's a question of the history, Your Honor. He was indicted, right? He was arrested on February 14, as Your Honor can recall. That was right before the COVID pandemic happened. And so he was not indicted until July of that year. And at the time, the district court was closed and there were no court hearings going on. And in September, even when he filed his motion for a speedy trial, the court was still closed. Even if we were to allow this, and I'm not foreshadowing, wouldn't he have served what his possible term would be within a month or something? So based off of the research that I've done and based off the sentencing guidelines, it appears that his potential, the maximum guidelines for Mr. Harris, if he was convicted at trial, the maximum guidelines, if he was at the maximum criminal history points, which I don't believe he is, but the maximum would be 46 months. Mr. Harris has already been incarcerated, as we stand here today, 37 months. It's gone to 38 months, mid-April. So he's been incarcerated much longer than he would ever be incarcerated for this thing. So he would invariably get some sort of time served, right? Yes, unless there's an upward departure by the district court. And I would like to point out that the top end is 46 months. Right now, he's 37 months. But there's experts who have opined that even if Mr. Harris were to proceed with forced medication, it could take up to a year. He could sit for a year more in being incarcerated while he's waiting to be tried for something that he's already served longer than the Senate's on. That's correct, Your Honor. Okay. Just checking. Much longer. Multiples longer. That's correct. Okay. And even if you consider that if the forced medication were to terminate and he was deemed competent to stand trial, at the end of that 12-month period, that would be 49 months, and then he would be placed on the trial calendar. So it would take even longer for Mr. Harris to proceed to trial. I have not found any case that has the cell factors and has a religious liberty claim embedded in it. I cannot find it. I mean, across the country, doing copious amounts of research, is there a case that you would like to point us to? So, in my opinion, and the government kind of disagrees, and the district court cited a Supreme Court case in Connecticut, the state versus Jacob. In that case, the Supreme Court stated that cell implicitly denied the First Amendment right. We disagree. There was no discussion about religion in cell. There was no discussion about a First Amendment objection to forced medication. There's no statutory rights, religious liberties rights. There's no statutory right that I found that relates specifically to cell. To cell. No, I've not seen any case interacting religious liberties statutes in the context of people who are incarcerated taking medication. So what would you have us to do today? Your Honor, I would like you to first consider that factor, right? And I believe that although it has not been argued in any case that I've seen, I believe that serves as a special circumstance which lessens the government's interest in proceeding to trial in this matter. That and a civil commitment. The government has taken a position that this court and the district court should not consider the civil commitment because it's just likely at this point. I disagree. The Budner facility, on behalf of the government, filed a petition for civil commitment on behalf of Mr. Harris. They did that because they stated that if this court, if the district court, decided not to move forward with trial, then it's possible that Mr. Harris could be released. They are therefore stepping in and saying we want a civil commitment to Mr. Harris in that situation. Which means that even if we did not proceed with forced medication, Mr. Harris would be facing a civil commitment, a lengthy civil commitment, that significantly lessens the government's interest in moving forward to trial. Have you exhausted your possibilities for working and talking about this matter? We've been moving quickly. I'm not asking for the content of any of that material. Yes, Your Honor, we have. And I think it's Mr. Harris's position that he's not interested in the plea, he's not interested in the settlement of this matter, any resolution outside of fighting his right of trial. You know, I'm going to step outside of the cell for a second, Your Honor. I think, although this matter is not before the court today, the underlying issue here is that the charges against Mr. Harris aren't that complicated. I think that's one issue that has not been considered throughout this process. I think the statute and the proceedings as a whole are looking at kind of a blanket rule as far as how to determine whether or not someone is competent to stay in trial. The trial in this matter wouldn't take longer than a day, maybe two days. There wouldn't be more than one or two witnesses. It was alleged that he made a threatening phone call to a federal judge's chambers. That either happened or it didn't happen. It was either a threat or it was not a threat. It does not take much for me to meet with Mr. Harris and prepare for trial. Indeed, I've sat with Mr. Harris and prepared for at least two appeals in this matter and countless motions. I'd like to state that first. But regarding the first cell factor, it is the appellant's position that the government did not meet their burden by clearing and convincing evidence as required by the court. For the reason of the civil commitment, for the reason of the First Amendment objection to medication, and also for the amount of time, as Your Honor has stated, that Mr. Harris faces, should he eventually be prosecuted for that? So on the civil commitment part of it, assuming you're right that if he were to be civilly committed, that would dramatically strengthen your argument as to involuntary medication for the criminal proceeding. Should we just lift the stay on the civil commitment proceeding, let that proceed, so that we can know one way or the other what's going on on that phase before we decide this claim? That would be my argument, Your Honor, because— I'm sorry, that would— I'm sorry? I didn't hear you. I said that would be my position. Yes. That it should— You would like to see a lift of the stay. I would like to see the lift of the stay. To see how the civil commitment proceeds. Exactly, for a number of reasons. And one, you know, the government has cited to Gutierrez by this court that states that the likelihood of a civil commitment is not substantial enough to lessen the government's interest in proceeding the trial. The Sixth Circuit in a case, United States v. Grisby, has stated that the courts have misconstrued the self-factor as it relates to civil commitment. More specifically, it states that if you take the government's position that there must be a certainty for civil commitment, then you can never meet that standard. How else can you find out that it's certain that a civil commitment would happen unless you allow the civil commitment to move forward as Your Honor has recommended? How do you think that long of that would take? How long do you think that would take? Your Honor, I'm not sure how long it would take, but I know right now we've been here for over three years, and there's no movement, and there's no trial date at hand. I know the civil commitment has already started. There's been a petition that's been filed. There's been a certification filed on behalf of the government that stated that Mr. Harris has already met the qualifications for civil commitment, and therefore the facility has already done its basic research. So that proceeding can be expedited. I think the only thing that would have to happen in that situation is for the facility to take its evaluation over Mr. Harris that it has done over the past year, release an opinion, and allow Mr. Harris to combat that opinion or follow a rebuttal to that opinion. If we were going to proceed to the law in this case rather than waiting, I'm not foreshadowing, you would have us decide on the first self-factor that they haven't met the burden. Is that correct? I believe the first self-factor is the strongest, Your Honor, because I believe those special circumstances significantly lessen the government's interest in this case. I would also argue, Your Honor, that under the second factor, I believe that the district court committed a clear error. In its order, it stated that the parties stipulated that Dr. Cloutier's report was correct. And accordingly, that the government met its burden on the second factor, which is whether or not the forced medication would significantly push their interest in this matter, was met. We disagree. Did you stipulate or not?  No, Your Honor. The stipulation was that if the psychiatrist was to testify, he would testify consistently with what the information in his report was. Not that you agreed with it on the merits? That's correct, Your Honor. Did you go back to the district court and say, you got this wrong, you got it misunderstood? No, Your Honor. The district court stated that for the first time in its order of reasons. Why didn't you file a reconsideration or something? You're not required to, and I'm just wondering. Your Honor, we could have filed a reconsideration. We did not. We filed a notice of appeal. And not just for that reason, because the other factors, we believe, that were clear in convincing error. There was clear errors in the rest of the district court's ruling as well. So if that were the error, and you think that was important, that would just get you back to square one? That would get us back to square one.  That's correct. So a clear error is not going to get you a win, right? That would not get us a win. That would put us right back before the district court. And in our opinion, the district court has accepted conclusory statements from the government to support its findings. We believe that Purcell, and in other cases by this court, there needs to be a more defined statement as to whether or not the particular treatment forwarded by the government will affect how those treatments would affect Mr. Harris and his particular situations. More specifically, Mr. Harris testified at the hearing that he previously suffered from a gunshot wound. But because of that, even in that, he did not accept medication. He has an adverse reaction to medication. He testified that he presently suffers from sciatica and a right foot drop. Even with that, he does not take pain medication. He's adverse to medication because of his religious reasons. And secondly, because he has had adverse reactions to medication in the past. The report mentions none of these things. The report only speaks about basic side effects that these medications have. I don't believe that's the precedent. The precedent is whether or not those side effects, you have to examine those side effects and how they would affect Mr. Harris and his particular characteristics. The government failed to do that at the sale hearing. Regarding the fourth factor, well, before we get to the fourth factor, I want to briefly touch on the third factor. There were no discussions, no detailed discussions in Dr. Cloutier's report, which was forwarded by the government at the sale hearing, as to whether or not there are less intrusive means that will be available that will also have the same results in this matter. The district court, in her opinion, put that burden on Mr. Harris. It stated that Mr. Harris did not forward any particular treatments and that he didn't present any treatments. That's not the burden here. Sale is specific. The burden is on the government to prove by clear and convincing evidence that there are no less intrusive or alternative methods available that would get us to the same spot. The government did not prove that. Regarding the fourth factor, your honors, the government also, I mean, the district court also accepted a conclusive statement from the government. In fact, on the last page of Dr. Cloutier's report, he states it is clinically appropriate and indicated to treat Mr. Harris' psychotic illness with anti-psychotic medication. That's a conclusive statement. He purports to support that statement by stating that there was an appendix attached to his report. The appendix was never given to the court. It was never given to the defense counsel, and it was never given to the government. Despite this, the district court held that the government met its burden, even under the fourth factor, where no evidence was presented that clear and convincing evidence that Mr. Harris should be voluntarily medicated. I reserve the rest of my time for the Board of Governors. Good morning, your honors. May it please the Court. My name is Dal Cameron. I represent the United States in this matter. I also was in counsel in the proceedings below, besides on this appeal. Tracking this Court's precedent in United States v. Palmer, and particularly in United States v. James, the district court correctly held that there's an important governmental interest and also recognized these factual distinctions when we're talking about whether or not there's clear error. If you look at the district court's opinion on this, the language directly pulled out of James is what the district court considered here, and that has not been addressed to this point by the defendant. Before I get into the other points of this, I'd like to just go ahead and address some of the concerns that the court brought up on Mr. Washington's argument. The first is obviously the amount of time that this defendant has spent in prison. It is a long time. It certainly has been exacerbated by the first 18 months of this case, where we were all on lockdown from COVID. But nonetheless, we have a defendant who's been sitting waiting for this proceeding to move forward for 36 months, and that does not go beyond our attention, which is the reason why the government twice now on appeal has been the one to move for expedited hearing on this. We understand that dilemma. So that should be placed in this box if that's a concern and the government has the same concern that this needs to move forward. The second part of it, though, is that after the first appeal that happened, immediately thereafter, and I'd like to correct one thing that Mr. Washington said, it was not waited until after the second appeal to move Mr. Harris to Butner under 4241D and begin those attempts at restoration. That happened in the seven months that it was on waiting for the first appeal. Once he came back and the recommendation was made that he would not get better without medication, as had been recommended by Mr. Mr. Harris's own expert in this case, the district court asked us to go ahead and file a motion to expedite the appeal so we could move into cell. And that's how we ended up. We argued over in Houston on that issue, and the court says, please try to get this moving. As soon as that order came out, like I think a week later, we immediately moved for the court to hear the first cell factor, which was the governmental interest. The proceedings go generally from Butner that they want to make, because it's an issue of law, they want the district court to determine first whether or not there's a significant governmental interest, and if there is, then they will submit the two, three, and four prongs of cell, which would propose how the medication should go forward. What's the government's position on the civil commitment proceeding and whether we should let this stay? The first issue, Judge, is the civil commitment proceeding is in the Eastern District of North Carolina. It's not here. I'm not certain what the authority of this court would be, and it's that I'm not certain, to order those proceedings to go forward in the Eastern District of North Carolina out of circuit. I don't know the answer to that. If we were ordering them, we would just be staying our appeal pending that or until further order of the court, and then I assume somebody would let them know that that's what we've done, and then they would choose at a comedy to do whatever they think would be best, and then we would evaluate whether we would want to continue to stay, whether we wanted to proceed and rule on our case or depending on what's going on there. Yes, Your Honor. It seems like there's no ordering of other courts to be done. I'd like to respond to that. The district court proceedings in North Carolina were stayed in order for us to move forward on the cell at the request of Butner. But if he stayed ours and said we're going to stay for them, and then they could say, oh, okay, well, we're either going to go or we think ours should be stayed after you, after you, and then we could figure out what would be best. I'm not sure how that would shake out, Your Honor, quite honestly, but I know that the Butner system— It's not out of courtesy. It's the fact that that would impact how we analyze the factors in this case. We don't have to stay indefinitely. We can put a clock on it. How much time do you think that proceeding would take? I don't know, Your Honor, because no adversarial proceedings have happened yet. There has been no official expert testimony, which leads me over into the James case again, where we had kind of a similar situation where this court was very direct on saying that it has to be certain that he will face civil commitment before we move forward. I think the quote is, before it would meaningfully lessen the government's interest in proceeding towards trial, which the district court in this case used those two primary elements that this court held in James, the two interests being to see him publicly vindicated and to see the possibility, as the district court said here, is if he were convicted on supervised release to be able to monitor to make sure he was taking medication and taking care of his mental health. What you're saying is the government had good reason to proceed with the cell proceeding. I don't hear you objecting to the idea of proceeding on the civil commitment if we can do that quickly or just to do that next. No, Your Honor. I think our substantial interest is bringing this gentleman to trial, and I think that's in line with the court's opinion in James. And I'd also point out in James— Can I ask that? Yes, ma'am. Go ahead and point out in James. Go ahead and point out in James. Go ahead. Okay, so in James, also one of the issues there that was argued by the defendant in that case is that the defendant had spent, I believe it was half of the time, and I think it was a guideline situation as we have here, as opposed to what the maximum penalty here is. Right now we have 36 months granted, a long period of time. I'm not trying to say that that's an issue that should be brushed aside, but the maximum sentence that we have here is six years. So it is on—although this is a difficult situation, and I'm not trying to shy away from that. I understand that. We have a tough decision between making him competent to proceed to trial or the civil commitment proceedings. I think you've answered the question now. Yes, Your Honor. I'm confused, though, because you said in answer to Judge Ho's question that it's because they want to monitor him on supervised release. Certainly the commitment proceeding would take care of any interest that was in monitoring on supervised release for his medical care and safety and all of that, because that would more than meet that. Do you mean under the civil commitment proceeding, Your Honor? Yes. Yes, Your Honor. If he's civilly committed, then your interest, it's your big interest that you just said, is already taken into account. But in accordance with this court's precedent, and it's in—I believe it's in James. I believe it's in Gutierrez. We're agreed. Okay. Yes, sir. We're agreed that under James, if he's civilly committed, that dramatically affects the calculation about the involuntary medication. So the natural question is why not then figure out whether we're getting civil commitment or not? Because under James, this issue was addressed, and it was not certain under similar circumstances that he would be civilly committed even if those proceedings were to proceed. And that's where we are right now. I understand. We're not talking about denying your request. We're talking about delaying the request to figure out this important factor that we all agree is important. I understand that, Your Honor, but I think the governmental interest in pursuing and proceeding to trial is what we're here to argue about under the cell proceedings right now, not whether or not it can be—he should be just civilly committed rather than facing trial as an important governmental interest. I understand the court's concern about let's see how that proceeds, but that has not even entered an adversarial proceeding at this point. We have no reason on the record before the court right now to believe that that's a certain outcome enough to make it a meaningful lessening of the government's interest under this court's jurisprudence, and we're just not there yet in that case. The Grigsby case that the defendant relies on here talked about in the cell proceedings. They had testimony regarding the likelihood of him being civilly committed. They had testimony in that case. They had brought up the possibility of him being found not guilty by reason of insanity and ending up in essentially the same area under 4243, which would be civil commitment after that type of finding. None of that has happened on the record in this case so far. Okay. Can we talk about the Sixth Circuit? Yes, ma'am. That would be the Grigsby case. Yes, exactly. I want to talk more about the certainty problem. The Sixth Circuit did not address the certainty problem like this court did in James, and it was a split circuit, out-of-circuit decision. The dissenting opinion in that case for what it's worth to this court was that it is speculative as to what would happen if we let that proceed, and I would submit that that's the same concern this court had in James. If there's no certainty to what would happen on that end of the proceedings, then it doesn't meet that requirement to take us out of the cell proceedings and put us into 4246 at this point. Did the district court make an error in saying that there was a stipulation about the medical evidence in this case? I don't know that the – I understand what Mr. Washington is saying there. It was definitely the stipulation of the parties that he would testify consistently with his report. I don't believe that – I don't read the court's comment on that to mean that he agreed because he's objected all through these proceedings, and that would be an automatic reversal, so I think at best it's just poor wording. I don't know because it doesn't seem like there's analysis on the report. It just says the report says this. They've stipulated the report. Therefore, we find this element by clear and convincing. There's no analysis. At best, shouldn't we remand? How can you win without a remand for us to have the district court clarify whether – and address it on the merits element prong two? Your Honor, and then I would bring us back into the same issue as addressed by this court in James. The government put on its evidence, met its burden of putting that forward. The evidence of Dr. Clocher was supported by all the other mental health experts, including the defendant's expert in that case, and he put on no contradictory evidence for the court to consider. The judge below recognized that, and this court specifically recognized that in James, that it is not clear error when there has been no contradictory evidence put on to challenge those findings. But the court didn't – But it's clear error to say that they've stipulated and agreed, and therefore we find this by clear and convincing error, that that's an error that's – it doesn't mean that Dr. Clocher's report won't be accepted, but the court has to do the work. Shouldn't we remand through a limited remand to allow the court to do its homework? Because it hasn't been done. I don't believe the district court had any other information under this court's precedent. Well, they analyzed the issue. The court just said this is stipulated, therefore it's met. That is not accurate, and so you have to – they have to give a reason why it's met. I respectfully read – when I look at the record as a whole in this case, Your Honor, I don't see that – I wouldn't – we would not argue that remand to fix that would be necessary. Where in this order does it say that the court on its – analyzed it on the merits rather than just accepting it as a stipulation? Your Honor – Because I'm looking at page 16 of the court's order, so if you can point me to something else where the court actually did analyze the second factor. Your Honor, it's in the beginning of the opinion. If the court would indulge me, I can grab the opinion and give you the record side on it. But it's at the beginning of the opinion. The judge says all the things that she considered, which included the record here. So it wasn't just judge – She thought she was considering a stipulated agreed to thing. I understand that. So that's not accurate. I've got the opinion. I'm looking at the first page right now, so it's not – it doesn't say I would find this even if not stipulated. It does not say that, Your Honor. Nothing like that. I guess what I'm trying to suggest is that she considered in making this ruling more than just the – just the Dr. Clocher's findings, which, by the way, was also based – and Dr. Clocher's findings was also based on the other reports of the other mental health professionals in this case. So if we just focus on Dr. Clocher's report, I think that's taking too narrow of a view as to the record and the evidence that had been developed. You mentioned that she's relying on those things too, except in the first part where she says I'm looking at the whole scheme of evidence. That's correct, Your Honor. So she was relying on Dr. Clocher's report for the second part. I believe that that was one of the main things, Judge, but I do remember we had plenty of hearings on this, and she was very familiar with Dr. Glover's report, Dr. Gaskell's report, who was the defendants' expert, and then the psychologist Brianna Glover at Butner, who issued lengthy reports on this, all of which suggested he will not become competent unless he is medicated with antipsychotics. Was it considered that he might not become competent if he is medicated? Dr. Clocher found on this medicine a 70% to 80% chance he will be restored to competency. Even taking into consideration his issues with medication? His religious? His medication issues. No, his gunshot wound or whatever it is. Yes, Your Honor, and obviously I'm not a medical professional, but the things taking aspirin and taking Aleve I think is a little bit different than the antipsychotics, and Dr. Gaskell does explain what he plans to do is to start, before we even begin therapy, with a very, very low dose just to make sure he tolerates it, and the district court has said that it's going to receive reports to monitor this along as we go. Is four to six months the right guideline? I understand it's six years possible, but is four to six months likely the guideline? I think, honestly, when I look at it, his criminal history is a little bit hard to get our heads around right now. I think it might be even a little bit lower than 46 months. So even lower. I appreciate the candid. No, Your Honor, and I think that we should go forward assuming that he has, like if he were to. He already served much more time than he would. I'm comfortable with that, and it could be a little bit more, but for purposes of this argument, if we were to assume that, I still don't think that the case law and precedent in this circuit would support that being a reason to kick this out. I have, I guess, one more. Two more real quick. I'd like to answer your question, judges. This situation is with the covid. I don't understand covid being an excuse for sitting for 18 months. People were trying cases under covid conditions throughout the circuit. So I don't get that as a way. This is the covid exception to the speedy trial. And I don't understand that. And I can I can give some guidance on this. So in that first 18 months would be what we're looking at in that in where covid was in effect. The first several months of this was with Mr. Harris's first counsel, and we were moving deadlines, trying to have time because the court was shut down. So that was first. I mean, we Mr. Harris was arrested, I think, the weekend before the covid lockdown started. And so that did break it. Another issue that we had was with transportation, getting on flights and bringing people and getting them to the stuff. It was a real mess. Your honor. Mr. Mr. Harris ended up getting covid during one of the transporting and having to be quarantined at the time. So I'm not one that that likes to say let's blame it on covid. But in those first that first year really gave us fits on trying to get him to where he needed to be, having him quarantined in certain places. We're now out of that. So can you address the religious liberties issue then? Yes, your honor. I there is the cases I've cited in my brief for the ones I was able to find. It's two district court cases. And the Gomes case is a second, but it's the second circuit case. But it's not religious liberty. I see them like it's yellow. I thought it would turn to turn to red. It is not a religious liberty. It's a First Amendment case, but it is it is dealing with freedom of speech and not his religious liberty. Haven't found anything on point with that except that we have cited some Supreme Court Supreme Court cases. And I think at a general level, constitutional rights, particularly in criminal cases, are necessarily there is give and take as to fifth and sixth. Like right now, we can look at where the defendant stands. He wants to assert his Fifth and Sixth Amendment rights to go to trial, which we do, too. But we have a problem with with competency that's been found. So he can assert those rights. But particularly when it comes to the narrow issue of religious liberty, I don't, Your Honor. But I would say that it is common that certain constitutional rights are necessarily limited in this context. So that's about the best that I can give the court at this point as far as the religious liberty goes. But as far as First Amendment and other other other constitutional rights, they can be limited in these contexts. But but not the case is some of them are already convicted people, not not pretrial, not forced medication. Why isn't why isn't some of our other drug precedent helpful in this area? And there has I understand there has been that the covid vaccination and the religious liberties and the refra, why isn't some of that applicable in this context? Your Honor, and I anticipated that you might might bring that up and candidly to the court. I'm not prepared to address that side of it. And that's another whole area that I would need to supplement briefing and get the department's position on that. I understand it's been a very short amount of time to brief this case. And so I appreciate that both sides have been ready to talk about it in a very short amount of time. Judge Oldham has a question. Yes, sir. Imagine hypothetically that we hold that the prisoners religious views lessen the governmental interest on a prong one of cell sufficient to require reversal here. And then imagine further that the EDNC civil commitment proceeding remains on on hold pending whatever happens here. What is the government's position about what happens next? Would you hold him until the statutory maximum of what, 72 months? Would you hold him past 72 months? What would be the what would be the next? Would you try again to I mean, if we so held in that way, it would presumably preclude another cell hearing because it's not the kind of thing you can fix with another report from Dr. Clothier or whoever. So we are where we are on that issue right now. So what would happen next? If and let me make sure I'm understanding your question. If we were to move into those proceedings or or find that his he shouldn't be medicated because of his religious liberties, what would happen next? That's a good question. And these these these situations are about as tough as any criminal thing. What we would do in that case. I don't know at this point. I honestly don't. There's the the forced medication and dealing with competency is candidly the best way I can describe it is picking the least worst out of several situations. It really is a delicate issue. And it's not lost on me with that. But what we would do if if we were to say he's not being medicated and we're kind of stuck in this limbo, I don't know honestly what the next position. I know that as as a as a my duty here is, is that I cannot prosecute. The court cannot hear and we cannot put an incompetent defendant on trial, even though he wants to go. And we're kind of past that point. Respectfully, your honors, I'll conclude just by saying that I believe this case is, if not on all fours, as close to on all fours as the United States versus James case. And I do not believe that has been addressed sufficiently enough to backtrack on that. And we would ask that you affirm the district court's order. Thank you. Briefly, your honors. In reply to what the governor stated, specifically as it relates to the civil commitment, I would like to harp on the fact again that in cell, the language in cell was not certainty. Language in cell was potential. There's no doubt that here there's a high potential of a civil commitment. The government has already filed a certificate. They filed a certificate of medical center, I mean, of mental disease and dangerousness. In that certificate, they outlined all of the factors required for a civil commitment under 18 U.S.C. 4246. Thereby stating and certifying to the court that Mr. Harris is a potential candidate, is a high potential candidate for civil commitment. I would also like to point out, as your honor mentioned, on page 16 of the judge's order, it specifically states, the parties have stipulated to the contents of Dr. Cloutier's report. Accordingly, the court finds that the government has established a second element by clear and convincing evidence. It's therefore clear that the government relied on a misinterpretation of a stipulation and thought that Mr. Harris stipulated to the contents of the report. As it relates to the First Amendment, I would like to suggest to this court that I have not seen, even in the case decided by the government in the district court, where the First Amendment, religious objection was brought up as a factor that substantially lessens the government's interest in prosecuting the case. I think that's important, because when you have that, combined with the civil commitment, and combined with the amount of time that Mr. Harris has been incarcerated up to this point, knowing that the maximum is 46 months, and we believe his criminal history is a lot less than that, so it would be a lot less than that, he would far exceed those guidelines by the time he would finish this involuntary medication. I would also like to point to the court that Mr. Harris has been fighting to proceed to trial for some time now. It is now that Mr. Harris has been forced to be involuntarily medicated that he's saying, hold up, that's not what I want to do. It's not that he doesn't want to proceed to trial, he wants to do so. But he does not want to do so above his religious beliefs and take medication that he's completely adverse to. He believes that such an order by the court is violative of his rights, and that by the court doing so, it's clear and convincing error, and we ask that this court overturn the district court's ruling and remand this matter. Thank you, Your Honor. Thank you. We have your argument. We note that your court appointed Mr. Washington, and we appreciate your service to the court. Thank you, Your Honor. Thank you. We appreciate both arguments, and this case is submitted, and the court will stand in recess until tomorrow.